UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNIVERSITY OF OREGON; OREGON STATE UNIVERSITY; UNIVERSITY OF SOUTHERN CALIFORNIA; ARIZONA STATE UNIVERSITY; CALIFORNIA INSTITUTE OF TECHNOLOGY; CHAPMAN UNIVERSITY; CLAREMONT MCKENNA COLLEGE; NORTHERN ARIZONA UNIVERSITY; PITZER COLLEGE; POMONA COLLEGE; PRESIDENT AND BOARD OF TRUSTEES OF SANTA CLARA COLLEGE; SCRIPPS COLLEGE; SEATTLE UNIVERSITY; STANFORD UNIVERSITY; SAINT MARY'S COLLEGE OF CALIFORNIA; UNIVERSITY OF ARIZONA; UNIVERSITY OF THE PACIFIC; UNIVERSITY OF SAN DIEGO; UNIVERSITY OF SAN FRANCISCO; and UNIVERSITY OF UTAH, <br><br>               Plaintiffs,<br>     v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; CHAD F. WOLF, in his official capacity as Acting Secretary of the United States Department of Homeland Security; and MATTHEW ALBENCE, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement,<br><br>               Defendants | Case No. 6:20-cv-01127<br><br>DECLARATION OF ALEXANDER H. SOUTHWELL IN SUPPORT OF PLAINTIFFS' MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND SUMMARY JUDGMENT |

## DECLARATION OF ALEXANDER H. SOUTHWELL

I, Alexander H. Southwell, do hereby declare:

1. I am an attorney licensed to practice law in the State of New York and will be applying for admission *pro hac vice* for this matter. I am a partner with the law firm of Gibson, Dunn & Crutcher LLP, counsel of record for Plaintiffs University of Oregon, Oregon State University, University of Southern California, Arizona State University, California Institute of Technology, Chapman University, Claremont McKenna College, Northern Arizona University, Pitzer College, Pomona College, President and Board of Trustees of Santa Clara College, Scripps College, Seattle University, Stanford University, Saint Mary's College of California, University of Arizona, University of the Pacific, University of San Diego, University of San Francisco, and University of Utah. I make this Declaration in support of Plaintiffs' Motions for Temporary Restraining Order and Preliminary Injunction and Summary Judgment. I have personal knowledge of the information set forth herein based upon my direct involvement in the matters at issue and upon my review of the documents and information referenced below.

2. On March 9, 2020, the United States Immigration and Customs Enforcement ("ICE") issued a "Broadcast Message: Coronavirus Disease 2019 (COVID-19) and Potential Procedural Adaptations for F and M nonimmigrant students" ("March 9 Guidance"), a true and correct copy of which is attached hereto as Exhibit A. Pursuant to the March 9 Guidance, ICE advised that "SEVP recognizes that the COVID-19 crisis is fluid and rapidly changing" and that it intended to "leav[e] room for schools to comply with state or local health emergency declarations." It stated, "SEVP is focused on ensuring that nonimmigrant students are able to continue to make normal progress in a full course of study as required by federal regulations. SEVP intends to be flexible with temporary adaptations."

3. On March 13, 2020, ICE issued COVID-19 Guidance for Student and Exchange Visitor Program stakeholders ("March 13 Guidance"), a true and correct copy of which is attached hereto as Exhibit B. Pursuant to the March 13 Guidance, students in the United States

holding F-1 or M-1 visas are allowed to "count online classes towards a full course of study" in the event their schools temporarily stopped in-person classes, regardless of whether the visa holders remained in the United States or departed the United States. The March 13 Guidance stated that it would remain "in effect for the duration of the emergency."

4. On July 6, 2020, ICE issued a "Broadcast Message: COVID-19 and Fall 2020" ("July Order"), a true and correct copy of which is attached hereto as Exhibit C. The July Order largely withdraws the exception that ICE announced in March. The July Order states that if a school determines that it will provide only online course instruction in the fall, students holding F-1 visas may not remain in the country to receive instruction. It provides that students holding F-1 visas "must depart the country or take other measures, such as transferring to a school with in-person instruction to remain in lawful status[,] or potentially face immigration consequences including, but not limited to, the initiation of removal proceedings." It is our current understanding that if the July 6 Directive takes effect, students with F-1 visas who are enrolled in remote programs will face immigration consequences if they do not leave the country within 15 days of a student's non-compliance.

5. The July Order has been met with widespread alarm and disapproval, from both government officials and affected public and private institutions.

6. Among the numerous statements of opposition are the following:

a. A letter signed by 32 United States Senators and 67 Members of Congress urging ICE and DHS to "to withdraw this proposed policy immediately, and not to proceed with [their] stated plans to publish it in the Federal Register as a Temporary Final Rule." The lawmakers state that "[t]he proposed policy throws the lives of hundreds of thousands of students, and the operations of hundreds of colleges and universities, into uncertainty just weeks before the start of the fall term, to the detriment of the United States and its institutions of higher education." The signees agree that the policy is "arbitrary" and "irrational," that "DHS and ICE released this guidance as a pretext to force institutions of

higher education to reopen," and that the justification ICE has given for the policy is "an obvious pretext." They note a statement by Ken Cuccinelli that he believes the policy will "encourage schools to reopen." In reality, they lawmakers believe that the July Order is "a cruel, senseless, and xenophobic attempt to … financially coerce colleges and universities to reopen campuses this fall, despite what is best for public health," specifically noting that the "policy is dangerous to the health and well-being of numerous communities" and that it "demonstrates a callous disregard for the harm this policy inflicts on international students, and is contrary to public health guidance from authorities within the Administration." The letter expressly raises the "concern[] that ICE's guidance is motivated not by public health considerations, but rather by animus toward immigrants, by a goal of forcing schools to reopen even as COVID-19 cases are rising, and by a desire to create an illusion of normalcy during this unprecedented public health emergency." A true and correct copy of which is attached hereto as Exhibit D.

b. A separate letter from Senator Susan Collins to the Acting Secretary of DHS urging that the July Order "must be rescinded." Senator Collins states that the policy is "arbitrary and capricious," "unfair and unrealistic," and that it "makes no sense" with respect to students who are already in the U.S. She further states that "[i]t is hard for [her] to imagine a good reason for this arbitrary requirement" and that the "arbitrary deadline [of July 15] seems intended to force [Universities to make] a hasty decision to fully reopen for in-person instruction." She concludes that "the arbitrary and capricious [July 6] guidance will cause real, deep, and long-lasting harm to these institutions and to our nation[al] interests." A true and correct copy of which is attached hereto as Exhibit E.

c. A statement from the Chief Executive Officer of the American Association for the Advancement of Science (AAAS), Sudip Parikh, "urg[ing] the administration to reconsider and rescind this guidance." The AAAS states that the July Order "is cruel to international students," "damaging to America's scientific leadership," and that it "will harm U.S.

academia[.]" The AAAS is the world's largest general scientific society; it publishes Science, the leading American peer-reviewed general science journal. A true and correct copy of which is attached hereto as Exhibit F.

d. A statement from the President of the American Association of Universities (AAU), Mary Sue Coleman, "strongly urg[ing] the administration to rescind th[e] guidance[.]" The Association explains that "the impact on international graduate students and undergraduate students already in the United States will be devastating, causing massive disruptions in their learning and research." It further states the July Order "forces sudden, difficult decisions on international students and universities" and that it is "likely to do further damage to our nation's universities, which are already struggling with unprecedented uncertainty, massive logistical complications, and significant financial losses due to the ongoing COVID-19 pandemic." The AAU finds the policy "immensely misguided and deeply cruel[.]" A true and correct copy of which is attached hereto as Exhibit G.

e. A statement from the Executive Director of the Presidents' Alliance on Higher Education and Immigration, Miriam Feldblum, "call[ing] on ICE to reverse course … and for Congress … to direct the reversal of this problematic and harmful policy." The Alliance states that the July Order "serves only to undermine international student[s] … and harm our nation's ability to attract and retain global talent." It also states that "the forthcoming rule would unduly pressure colleges and universities—already experiencing historic fiscal strains and uncertainty—to prematurely open in-person courses or else risk losing invaluable international student enrollments and contributions." A true and correct copy of which is attached hereto as Exhibit H.

f. A letter from the Federation of Associations of Schools of the Health Professions written "to strongly oppose" the July Order and "urg[ing] the administration to revoke this policy[.]" The Federation states that the new policy "complicates decision-making for schools," "would create hardships both for faculty administration and students," and may

Declaration of Alexander H. Southwell
in support of Plaintiffs' Motions for
Temporary Restraining Order and
Preliminary Injunction and Summary Judgment    5

"drive current students out and decrease the attractiveness of the United States as a destination for students and researchers." The letter further suggests that the policy creates "an inherent risk" to public health by forcing students to travel during the pandemic, both to their home countries and potentially back to the United States. The Federation comprises 18 associations that together represent 7,429 programs, institutions, hospitals, and health systems, and more than 1.3 million students, faculty, clinicians, administrators, residents, and researchers. It includes, for example, the Association of American Medical Colleges and the American Association of Colleges of Nursing. A true and correct copy of which is attached hereto as Exhibit I.

g. A statement from the President of Arizona State University, Michael M. Crow, calling the July Order "a shocking, thoughtless and ill-considered attack against a key element of America's economic prowess." Mr. Crow calls the July Order "extremely disruptive" to higher education and states that it "would damage the American economy in a purely negative and chilling way," causing America to "relinquish [its] position of global leadership in teaching and learning." A true and correct copy of which is attached hereto as Exhibit J.

h. A statement from the President of Columbia University, Lee C. Bollinger, addressed to the Columbia community, stating that the July Order "mark[s] a devastating reversal of federal policy," advancing a "destructive and indefensible purpose." The statement characterizes the July Order as "deeply misguided" and notes that it will cause "damage to the nation's academic institutions" and "severely disrupt and cause enormous harm to the lives of the international students who are part of [the] Columbia family." A true and correct copy of which is attached hereto as Exhibit K.

i. A statement from the President of New York University, Andrew Hamilton, addressed to NYU students, noting that the July Order "is just plain wrong and needlessly rigid" and

  stating that "NYU will be reaching out to Federal officials urging them to revoke or modify this rule."  A true and correct copy of which is attached hereto as Exhibit L.

j. A statement from the President of Texas A&M University, Michael K. Young, stating that the policy "could have a devastating impact on international students, as well as on our university campuses and communities[.]"  The letter expresses support for the statement issued by the AAU opposing the policy, and expresses the President's "sincere[] hope that the guidance will be rescinded in light of the AAU statement and other similar reactions."  A true and correct copy of which is attached hereto as Exhibit M.

7. My team and I have heard from a number of students who have suffered and face particular irreparable hardships as a direct result of the July Order.  Selected summaries of those students' situations follow, with individual identifying information omitted due to students' concerns with privacy and retaliation:

a. Student A is an international student from Iran studying computer science at Stanford.  She is openly queer / bisexual and does not wear a hijab.  Student A has also made political posts on her social media accounts and fears returning to Iran if Stanford is unable to offer in-person classes, as Iran may consider her activities "anti-Islamic Republic of Iran."  In addition, as a woman in Iran, she doubts she would be able to find work in computer science or engineering fields, and, given the existing travel ban on Iran, she does not know if she would ever be able to come back to the United States to finish her degree.

b. Student B studies Political Science and International Relations at USC and is an international student from Tunisia.  They are currently in Tunisia and fear traveling back to the United States due to their compromised immune system and the risk of exposure to COVID-19, particularly as the only way back to the United States from Northern Africa would require connecting flights in Europe.  Due to Student B's health condition, becoming infected could be fatal, and they feel the July Order will force them to risk their life in order to continue their education.

Declaration of Alexander H. Southwell
in support of Plaintiffs' Motions for
Temporary Restraining Order and
Preliminary Injunction and Summary Judgment  7

    c. Student C is an international student from Greece studying Psychological Science at Pomona. Both of their parents currently live in the United States, and if Student C is forced to return to Greece they would live alone, without any family. As they are concerned Pomona may not offer in-person classes in the fall, the July Order has resulted in Student C considering transferring to a community college offering in-person classes to ensure they are able to stay in the United States.

    d. Student D, an international student from Hong Kong, is working on a PhD at Stanford. As a PhD student, Student D devotes the majority of their studies to research, and it is unclear to Student D if research will satisfy the in-person requirement. Enrolling in an in-person class would result in them signing up for a class that they do not need and are not interested in. If the University were to stop providing in-person classes, it would not be possible for Student D to transfer to another university without abandoning their research and the funding that supports their education.

    e. Student E is an international student studying Political Science at USC. Currently, they live with two individuals who are both immunocompromised. Student E fears attending in-person classes and risking exposure to COVID-19 which they could then pass to these people. Returning home would not only separate them from their significant other and community, it would also disrupt their education and career prospects.

    f. Student F, an international student from Germany, is working on a PhD at Stanford. All of the classes they planned to take in pursuit of their degree will only be offered online, resulting in Student F signing up for unnecessary classes to make sure they can meet the "in-person" requirement. Having recently signed a twelve-month lease, if Stanford stops offering in-person classes and Student F is forced to return to Germany, they would not only need to break their lease but also leave their significant other behind. Further, Student F would not be able to continue their research while living abroad, and would not be able to maintain their stipend / TA salary, resulting in the loss of their only source of income.

Declaration of Alexander H. Southwell
in support of Plaintiffs' Motions for
Temporary Restraining Order and
Preliminary Injunction and Summary Judgment    8

g. Student G is a rising senior studying Mathematical Economics at Pitzer College and is an international student from China. Obtaining a flight to China can be difficult, as many flights have been cancelled, and Student G does not have the financial capability to purchase a ticket at this time given the soaring prices. Removing Student G's F-1 status threatens their studies and jeopardizes their plans to take the GRE exam and apply for graduate school this year because doing so would be extremely difficult, if not impossible, in China.

h. Student H is an international student from the United Kingdom studying math and computer science at Stanford. Student H fears attending in-person classes as both she and her father, with whom Student H lives, have health conditions which place them at risk for significant complications if they are exposed to the coronavirus. Student H also fears the July Order will force her to return to the United Kingdom if she does not attend in-person classes, increasing the risk of exposure to COVID-19 and separating Student H from her immunocompromised father. The July Order has also resulted in a number of other Stanford PhD candidates and post-doctorate students being unable to continue their programs as they are not able to return to Stanford for in-person classes. This will significantly impact Student H's research as she planned to collaborate with these individuals.

i. Student I studies Psychology at Pitzer College and is an international student from China. Student I fears the July Order will force them to return to China and lose eligibility for OPT (a post-graduate work authorization program). In addition, the difficulty in obtaining a ticket to China, the cost of such a ticket, and the increased likelihood of exposure to COVID-19 during the trip makes returning home in the near future incredibly difficult and unsafe.

j. Student J is a Chinese international student studying Humanities at Scripps College. As Scripps College will not be offering in-person classes in the fall, Student J is concerned the

       July Order will force them to return to China or face immigration consequences. The July Order also poses severe financial hardship on Student J and their family as obtaining a ticket for a flight back to China will cost nearly half of Student J's mother's yearly income. In addition, Student J would be forced into mandatory quarantine by the Chinese government for 14 days upon return.

k. Student K is an international student from Nepal studying Political Economy at Stanford. As an F-1 visa holder, Student K is working toward their dissertation while helping teach undergraduate courses at Stanford. If Stanford is unable to provide in-person classes, they will not be able to return to their home country, as international flights to Nepal are currently disallowed. Even if Student K were somehow able to return to Nepal, they would be unable to conduct their research or perform their teaching duties, severely impacting their education and dissertation progress.

I declare under the penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Signed in Mamaroneck, New York, this 13th day of July 2020.

_____
Alexander H. Southwell

Declaration of Alexander H. Southwell
in support of Plaintiffs' Motions for
Temporary Restraining Order and
Preliminary Injunction and Summary Judgment    11